**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| IBRAHIM MARTIN-BANGURA, | ) | |
|     **Plaintiff,** | ) | |
| | ) | |
|          v. | ) | **Case No. 1:08cv1001** |
| | ) | |
| COMMONWEALTH OF VIRGINIA | ) | |
| DEPARTMENT OF MENTAL HEALTH, | ) | |
| MENTAL RETARDATION AND | ) | |
| SUBSTANCE ABUSE SERVICES, D/B/A | ) | |
| NORTHERN VIRGINIA TRAINING CENTER, | ) | |
|     **Defendant** | ) | |

## MEMORANDUM OPINION

This Title VII gender, race, and ethnicity discrimination action presents the following threshold, potentially dispositive question:

> Is a plaintiff's Title VII discriminatory discharge action barred by Virginia claim or issue preclusion rules where, as here, plaintiff litigated his wrongful termination claim, but not his discrimination claim, by (i) filing a grievance with his state employer and (ii) appealing the Hearing Officer's decision to the Circuit Court of Fairfax County pursuant to Virginia Code § 2.2-3000 *et seq.*?

Settled Virginia principles of claim preclusion compel an affirmative answer to this question. Because plaintiff elected to litigate his wrongful discharge claim in state court, and because he could have asserted his discrimination claims as part of his wrongful discharge action in that court, but failed to do so, his discrimination claim is now barred by Virginia's claim preclusion doctrine.

I.

Plaintiff is an African American adult male born in Sierra Leone, West Africa. On July

19, 2006, he was terminated from his position as a Human Service Care Worker with defendant, the Virginia Department of Mental Health, Mental Retardation, and Substance Abuse Services at the Northern Virginia Training Center ("NVTC"). The events leading to and following his termination are pertinent to the pending motion and merit brief recounting here.[1]

On or about July 6, 2006, one of plaintiff's female co-workers, Julia Redden, reported that she had been the victim of sexual harassment by plaintiff. Following this report of sexual harassment, defendant directed Glenna Darlington, a veteran thirty-one year NVTC employee with EEO training in the investigation of sexual harassment claims, to conduct an investigation into the allegations. The investigation disclosed that Redden stated she had a casual, friendly relationship with plaintiff while she was employed at NVTC during her college summer break in 2005. She further stated, however, that plaintiff began to act in a far more familiar manner with her during her one month of employment over her winter break in 2006. Specifically, she alleged he patted her on the buttocks and touched her shoulder. Thereafter, according to Redden, during her 2006 two-month summer employment, and prior to her beginning a permanent position elsewhere, plaintiff asked her if he could visit her in her college dorm room or in a hotel room.

---

[1] The facts recited here are derived from the existing record, including (i) the state Hearing Officer's decision, (ii) the state circuit court briefs and order, (iii) the transcript of the state administrative hearing, and (iv) the EDR manual. Reliance on these sources is appropriate in resolving a threshold dismissal motion based on claim or issue preclusion grounds. *See Davani v. Clement*, 263 F. App'x 296, 298–99 (4th Cir. Feb. 6, 2008) (considering plaintiff's state grievance proceeding, including testimony offered at the hearing, in affirming a Rule 12(b)(6) dismissal on *res judicata* grounds); *Brooks v. Arthur*, 611 F. Supp. 2d 592, 596–97 (W.D. Va. 2009) (taking judicial notice of the EDR Grievance Procedure Manual for purposes of resolving a threshold dismissal motion); *Gasner v. County of Dinwiddie*, 162 F.R.D. 280, 282 (E.D. Va. 1995) (stating that when deciding a motion to dismiss courts may consider authentic public records pertinent to the plaintiff's claim). Plaintiff's cavil relating to the quality of the notarized hearing transcript does not bar reliance here on the transcript.

According to Redden, plaintiff's behavior grew more offensive during this period, and on separate occasions he pinned her against the wall and against a chair with his body so that she could feel his erection, which he referred to as his "black cobra." On each of these occasions Redden claims that she pushed plaintiff away, telling him to stop and that his conduct was inappropriate.

The investigation also included interviews of plaintiff, who denied the sexual harassment allegations, as well as interviews of other NVTC employees. At the conclusion of her investigation, Darlington prepared an investigation report containing her findings and including summaries of all of the interviews. Based on Darlington's investigation, defendant ultimately concluded that Redden's sexual harassment claim against plaintiff was valid and issued a Group III Written Notice terminating plaintiff's employment on July 19, 2006. Plaintiff then elected to challenge his termination through the state employee grievance procedure pursuant to Virginia Code § 2.2-3000 *et seq.* A description of this grievance procedure is important to the resolution of the question presented.

In Virginia, the Department of Employment Dispute Resolution ("EDR") is responsible for developing the Commonwealth's grievance procedure. *See* Virginia Code § 2.2-3003(A). The EDR grievance procedure begins with review of an employee's complaint by the first-step respondent, usually the employee's immediate supervisor. *See* EDR Grievance Procedure Manual §§ 2.4, 3.1, *available at* www.edr.virginia.gov. If the grievance is not settled during this first step of supervisory review, the matter then proceeds to a second-step respondent, a higher supervisor, who engages in unrecorded, informal fact-finding. *Id.* § 3.2. If the grievance is not resolved at the second step, the matter proceeds to a third level of internal managerial review. If

3

this third level of internal review fails to resolve the issue, the matter may be qualified for a hearing. *Id.* § 3.3. If the Agency Head determines that the matter qualifies for a hearing, the human resources office requests the appointment of an independent state Hearing Officer. *Id.* § 4.2. If the Agency Head decides not to qualify the matter for a hearing, his decision may be appealed to the EDR Director, *id.* § 4.3, and then to the circuit court of that jurisdiction, *id.* § 4.4.

A grievance that is qualified for a hearing is heard by a neutral, state-appointed Hearing Officer. Virginia Code § 2.2-3005(B). The Hearing Officer is required by EDR's grievance procedure to record the hearing verbatim. EDR Grievance Procedure Manual § 5.6. With respect to the procedure of the hearing, the Hearing Officer has the authority, *inter alia*, (i) to hold a prehearing conference; (ii) to require parties to exchange a list of witnesses and documents; (iii) to issue orders for the appearance of witnesses and the production of documents; (iv) to administer oaths; (v) to admit or exclude evidence, including mitigating and aggravating evidence; (vi) to accept offers of proof of excluded evidence; and (vii) to render written decisions and provide appropriate relief. *Id.* § 5.7. The Hearing Officer must provide a written decision and may grant relief including reinstatement, award of back pay, an order requiring the agency to comply with applicable law, and certain attorneys' fees pertaining to termination and reinstatement, but not damages. *Id.* § 5.9. A Hearing Officer's decision is subject to three types of administrative review; a party may (i) request that the Hearing Officer reconsider his decision; (ii) appeal to the Director of the EDR on the ground that the hearing decision does not comply with the grievance procedure; or (iii) appeal to the Department of Human Resources on the ground that the hearing decision is inconsistent with state or agency policy. *Id.* § 7.2. Finally, if

4

either party feels that the result of the hearing is contrary to law, he may seek review in the appropriate state circuit court. *Id.* § 7.3(a). Pursuant to Virginia Code § 17.1-405, a party may then appeal any unfavorable decision of the circuit court to the Virginia Court of Appeals.

In the instant case, the parties were unable to resolve the matter within the agency and plaintiff's claim of wrongful termination was then deemed qualified for a hearing. On December 28, 2006, plaintiff, represented by counsel, presented his case to the state Hearing Officer. In this respect, the Hearing Officer reviewed Darlington's investigation report, which included witness statements from nine NVTC employees, and then heard live testimony from eight witnesses: Darlington, Redden, plaintiff, the NVTC facility director, and four other NVTC employees. During the hearing, plaintiff had the opportunity to mitigate the disciplinary termination he received by offering evidence of discriminatory termination, but plaintiff chose not to address this issue.[2] On January 3, 2007, relying primarily on the testimony of Redden and plaintiff, the Hearing Officer upheld the Group III Written Notice and termination.

Plaintiff then appealed the Hearing Officer's decision to the Circuit Court of Fairfax County, Virginia, pursuant to Virginia Code § 2.2-3006. There, plaintiff argued, by counsel, that the Hearing Officer's credibility determinations were unfounded and contrary to law because some of the witness statements reviewed by the Hearing Officer were unsigned, and some of the individuals who gave the statements did not testify at the hearing. The Hearing Officer's written decision, however, makes it clear that his decision was based primarily on his assessment of the

---

[2] The only references to plaintiff's race or ethnicity were allegations made by plaintiff that the complaining witness, Redden, was "mad at Africans," and that Darlington, who is African American, did not believe plaintiff because plaintiff was born in Africa. Def.'s Mem. in Supp. of Mot. to Dismiss Ex. C at 237.

credibility of Redden's testimony as compared to the credibility of plaintiff's testimony at the

hearing. On April 6, 2007, the Circuit Court of Fairfax County, Virginia, entered a final order

denying plaintiff's appeal and affirming the Hearing Officer's decision. Although plaintiff had

the option of appealing the Fairfax County Circuit Court's decision to the Virginia Court of

Appeals, he chose not to do so.

Prior to the entry of Fairfax County Circuit Court's final order, plaintiff had chosen to

challenge his termination by filing a charge with the EEOC under Title VII of the Civil Rights

Act. On June 23, 2008, after the entry of the state court's final order, the EEOC issued plaintiff a

"right to sue" letter with respect to his EEOC charge, and on September 24, 2008, plaintiff filed

the instant complaint alleging race, ethnicity, and gender discrimination in violation of Title VII

of the Civil Rights Act, 42 U.S.C. § 2000e-2(a), by Virginia's Department of Mental Health,

Mental Retardation, and Substance Abuse Services. Specifically, plaintiff claims here that his

termination was a result of race, ethnicity, and gender discrimination and alleges a disparity

between the discipline he received and the discipline that others of non-African origin received

for similar offenses.

Defendant moved for dismissal pursuant to Rule 12(b)(6), Fed. R. Civ. P., contending

that plaintiff's federal complaint was barred by the doctrine of *res judicata*. Defendant argues

that plaintiff's decision not to address explicitly the issue of discriminatory discipline during the

state grievance hearing is irrelevant to the preclusive affect that the state proceeding has with

respect to this matter and that because plaintiff's claim is now barred, plaintiff has failed to state

a claim on which relief may be granted. Plaintiff counters that because his previous state

grievance proceeding challenged only whether he had committed sexual harassment, his federal

6

claim alleging discriminatory discipline, in violation of Title VII of the Civil Rights Act, should not be barred.

II.

Confusion sometimes marks legal discourse on the subjects of *res judicata*, claim preclusion, issue preclusion, and collateral estoppel. Some courts have imprecisely used *res judicata* to mean "claim preclusion" and collateral estoppel to mean "issue preclusion." *See Allen v. McCurry*, 449 U.S. 90, 94 n.5 (1980) (noting that although the Restatement of Judgments equates *res judicata* to claim preclusion and collateral estoppel to issue preclusion, some courts refer to both preclusion doctrines as *res judicata*). The Supreme Court recently attempted to bring clarity to the subject by noting that issue preclusion and claim preclusion are distinct doctrines falling under the general rubric of *res judicata*. Specifically, the Supreme Court noted in *Taylor v. Sturgell*, 128 S. Ct. 2161, 2171 (2008), that "[t]he preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as 'res judicata.'" The Court then went on to make clear that claim preclusion is a doctrine that prevents "successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit." *Id.* (internal quotation marks and citation omitted); *see also id.* at 2171 n.5 (noting that claim preclusion describes the rules formerly known as "merger" and "bar"). The Court further explained that the separate and distinct doctrine of issue preclusion, once known as collateral estoppel, allows a party to prevent "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment." *Id.* (internal quotation marks and citation omitted).

7

Importantly, the *res judicata* effect of a judgment applies not just to future claims in the

forum issuing the judgment, but also extends to future claims in all federal and state courts.

Congress has codified this principle in 28 U.S.C. § 1738, which requires that state judicial

proceedings "shall have the same full faith and credit in every court within the United States . . .

as they have by law or usage in the courts of such State . . . from which they are taken." Federal

courts applying this principle use a two-step test to assess the preclusive effect that a prior state

court decision has on a pending federal action. *See In re Genesys Data Tech., Inc.*, 204 F.3d 124,

128 (4th Cir. 2000). First, federal courts "must look to state law to determine the preclusive

effect of a state court judgment." *Id.* at 128. If state preclusion doctrine would not bar

relitigation of an issue or claim from the earlier state proceeding, the analysis ends. *See id.* If,

however, the state court proceeding would preclude the second action under state law, a federal

court must then determine whether Congress has created an exception to the operation of § 1738

for the cause of action pending in federal court. *See id.* In the event the state's preclusion

doctrine bars relitigation of the claim or issue, and if Congress has created no applicable

exception to § 1738, then the federal action is precluded by the prior state proceeding. *See id.*

These general principles provide the framework for analysis of defendant's *res judicata*

arguments.

Defendant argues that plaintiff's action is barred by both issue and claim preclusion

doctrines. With respect to issue preclusion, defendant argues that plaintiff is precluded from

rearguing or relitigating the issue of discriminatory discharge because the state Hearing Officer

found that plaintiff sexually harassed a co-worker, which is a legitimate basis for defendant's

termination. Plaintiff counters that his claim in this case—discriminatory discipline—was

8

neither presented nor decided in the state proceeding. With respect to claim preclusion, defendant argues that plaintiff's discriminatory discipline claim is barred because he might have brought this claim in the state proceeding, but failed to do so. Plaintiff counters that claim preclusion only applies if there is identity between the two causes of action, the remedies sought, and the parties involved. As claim and issue preclusion are distinct doctrines, the parties' arguments relating to each are addressed separately.

*A. Issue Preclusion*

Analysis of the parties' issue preclusion dispute appropriately begins with a summary of Virginia law on this doctrine. In Virginia, "[t]he doctrine of collateral estoppel precludes the same parties to a prior proceeding from litigating in a later proceeding any issue of fact that actually was litigated and was essential to the final judgment in the first proceeding," and this doctrine applies notwithstanding that the causes of action or the relief sought in the two proceedings may differ. *Whitley v. Commonwealth*, 538 S.E.2d 296, 299 (Va. 2000) (citations omitted). In *Whitley*, the Supreme Court of Virginia enumerated four elements that must be satisfied before a party can invoke the doctrine of issue preclusion:

> (1) the parties to the two proceedings must be the same; (2) the factual issue sought to be litigated must have been actually litigated in the prior proceeding; (3) the factual issue must have been essential to the judgment rendered in the prior proceeding; and (4) the prior proceeding must have resulted in a valid, final judgment against the party to whom the doctrine is sought to be applied.

*Id.* And it is the party seeking to preclude a factual issue that bears the burden of demonstrating that these four elements are satisfied. *See Bates v. Devers*, 202 S.E.2d 917, 921 (Va. 1974). Moreover, it is also settled that where a party in the second suit is in privity with a party from the first suit, the first element of issue preclusion is met. *Whitley*, 538 S.E.2d at 300.

9

The most commonly disputed elements of issue preclusion—elements 2 and 3—require that the issue to be precluded must have been precisely the same issue that was previously litigated and the issue previously litigated must have been essential to the judgment in the first case. *See id.* (determining that factual issues underlying a plaintiff's state court claim had been both actually litigated in a previous federal action and essential to the federal court's judgment before concluding that collateral estoppel applied); *see also Angstadt v. Atl. Mut. Ins. Co.*, 457 S.E.2d 86, 88 (Va. 1995) (holding trial court erred in applying doctrine of collateral estoppel in part because the factual issues litigated in the first action were not identical to the issues in the second proceeding). Importantly, for purposes of this case, it is settled Virginia law that the decision of a state Hearing Officer "is treated as the equivalent of a state court determination; it carries the same weight as a jury's verdict and will not be disturbed on appeal unless it is plainly wrong or without evidence to support it." *Davani v. Clement*, 263 F. App'x 296, 297 (4th Cir. Feb. 6, 2008). Additionally, a state circuit court's review of a Hearing Officer's decision "constitutes a valid state court judgment to which federal courts must give the same preclusive effect that another state court would." *Id.* at 298. Thus, a state administrative proceeding that is judicially reviewed results in a valid, final judgment. *See Davenport v. North Carolina Dep't of Transp.*, 3 F.3d 89, 93 n.4 (4th Cir. 1993) ("28 U.S.C. § 1738 requires application of state preclusion law only where, as here, the state administrative decision has been judicially reviewed . . . .").[3]

---

[3] This principle was clearly established by a pair of Supreme Court cases. In *Kremer v. Chemical Construction Corp*, 456 U.S. 461 (1982), the Supreme Court held that a state court's judgment affirming a state agency's finding of no discrimination was entitled to preclusive effect in the a subsequent Title VII action under 28 U.S.C. § 1738. In *University of Tennessee v. Elliott*, 478 U.S. 788 (1986), the Supreme Court clarified that an unreviewed state administrative

In the instant case, defendant contends that because the Hearing Officer found that plaintiff sexually harassed a co-worker, a legitimate basis for termination, plaintiff is barred from relitigating the issue of whether the discharge was an instance of discriminatory discipline. Yet, this argument clearly fails as the second requirement for the operation of Virginia's issue preclusion doctrine is not met. The factual issue presented and resolved in the state proceeding, namely whether plaintiff sexually harassed Redden and, if so, whether termination was warranted, is different from the factual issue presented here, namely whether defendant discriminated against plaintiff on the basis of plaintiff's race, gender, or ethnicity by terminating plaintiff rather than imposing a lesser punishment. The latter issue was not presented and resolved in the prior state proceeding. Nor is it an adequate basis for the application of issue preclusion to note that plaintiff alleged in the state proceeding that Redden, the complaining witness, was "mad at Africans," and that Darlington, an African American, did not believe plaintiff because plaintiff was born in Africa. Def.'s Mem. in Supp. of Mot. to Dismiss Ex. C at 237. While these allegations may have had some relevance to the validity of the sexual harassment allegations, they by no means show that the issue of discriminatory discipline was presented or litigated in the state proceeding; it was not. Thus, issue preclusion does not apply

_____

proceeding should not be given preclusive effect on Title VII claims brought in federal court, even if such a decision would be afforded preclusive effect in the state's own courts. Interestingly, in this regard, the Supreme Court distinguished between Title VII claims and claims brought under the Constitution and the Reconstruction civil rights statutes. For the latter category, the Supreme Court, invoking federal common law rules of preclusion, held that "when a state agency acting in a judicial capacity resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, federal courts must give the agency's fact-finding the same preclusive effect to which it would be entitled in the State's courts." _Elliott_, 478 U.S. at 799 (internal quotation marks and citations omitted).

here.[4]

*B. Claim Preclusion*

Claim preclusion analysis yields a different result. As the following discussion

demonstrates, Virginia's claim preclusion doctrine, as recently modified by the Supreme Court of

Virginia, bars plaintiff's discriminatory discipline claim because this claim grows out of the same

transaction—his termination—as does the wrongful discharge claim he presented in the state

proceeding, and because he could have brought his discriminatory discharge claim in the state

proceeding, but failed to do so.

A succinct, albeit incomplete, summary of Virginia's claim preclusion doctrine is that it

bars "relitigation of the same cause of action, or any part thereof, which *could have been litigated*

between the same parties and their privies." *Smith v. Ware*, 421 S.E.2d 444, 445 (Va. 1992)

(emphasis added).[5] Under Virginia's claim preclusion doctrine, a party asserting the bar of a

previous judgment must still show that the previous judgment was a valid, final judgment on the

merits. *See State Water Control Bd. v. Smithfield Foods, Inc.*, 542 S.E.2d 766, 769 (Va. 2001).

And until recently, a party asserting claim preclusion was also required to show that the claim to

be precluded required the same evidence, and sought the same remedy, as the previously litigated

claim. *See Davis v. Marshall Homes, Inc.*, 576 S.E.2d 504, 506–08 (Va. 2003) (citing *Brown v.*

*Haley*, 355 S.E.2d 563, 567 (Va. 1987)). This is no longer required for the operation of claim

------

[4] Note, however, that plaintiff clearly may not relitigate here whether he sexually harassed Redden. As to that fact, plaintiff is issue precluded or collaterally estopped.

[5] Congress can, of course, mandate specific exceptions to this rule and prevent preclusion of specific federal causes of action; it has not done so for Title VII claims. *See Kremer v. Chemical Constr. Corp.* 456 U.S. 461, 475 (1982) (finding that Title VII did not create an exception to § 1783).

12

preclusion. By promulgating Rule 1:6, the Supreme Court of Virginia has discarded the same-evidence and same-remedy requirements, adopting instead a same "conduct, transaction, or occurrence" test. Rule 1:6, Va. S. Ct. Thus, Rule 1:6, which is entitled *Res Judicata* Claim Preclusion, states:

> A party whose claim for relief arising from identified conduct, a transaction, or an occurrence, is decided on the merits by a final judgment, shall be forever barred from prosecuting any second or subsequent civil action against the same opposing party or parties on any claim or cause of action that arises from that *same conduct, transaction or occurrence, whether or not the legal theory or rights asserted in the second or subsequent action were raised in the prior lawsuit, and regardless of the legal elements or the evidence upon which any claims in the prior proceeding depended, or the particular remedies sought.*

Rule 1:6(a), Va. S. Ct. (emphasis added).

As the terms of this Rule make clear, claim preclusion in Virginia operates to bar any claim that could have been brought in conjunction with a prior claim, where the claim sought to be barred arose out of the same conduct, transaction, or occurrence as the previously litigated claim. This holds true notwithstanding that the evidence required and remedies sought in the two claims are not the same. Thus, Rule 1:6 plainly modifies and broadens the claim preclusion doctrine. As the Virginia Court of Appeals recognized, Rule 1:6 adopts a "broader transactional approach" and was promulgated to supercede the holding in *Davis*, 576 S.E.2d 504. *See Virginia Imports Ltd. v. Kirin Brewery of America, L.L.C.*, 650 S.E.2d 554, 561 n.6 (Va. Ct. App. 2007) (citing Kent Sinclair, *Guide to Virginia Law & Equity Reform and Other Landmark Changes* § 11.01 *et seq.,* at 245 (2006)).

Rule 1:6, applied to the facts of this case, compels the conclusion that plaintiff's claim is barred. This conclusion follows from three propositions:

13

(i) The decision by the state Hearing Officer, because it was affirmed by a state court, is entitled to preclusive effect in a subsequent Title VII case such as this one.[6]

(ii) Although the issue of discriminatory discipline was not explicitly addressed in the state proceeding, nor was that issue the focus of the evidence presented, the discriminatory discipline claim nonetheless arises from the same conduct, transaction, or occurrence as the wrongful discharge claim plaintiff presented in the state proceeding.

(iii) Plaintiff could have brought his discriminatory discipline claim in the state proceeding.

The first proposition is neither controversial, nor disputed; the second and third propositions merit brief elaboration.

The conduct, occurrence, or transaction complained of in the state grievance was plaintiff's receipt of a Group III written notice and his subsequent termination from NVTC. Likewise, the very same transaction, his termination from NVTC, underlies plaintiff's federal Title VII claim at issue here. As Rule 1:6 makes clear, plaintiff is precluded here from asserting any claims he had concerning his termination from NVTC, regardless of evidence required or remedy sought, if he could have asserted those claims in the prior state proceeding. Nor is there any doubt that plaintiff could have raised his allegations of discriminatory discipline during the state grievance procedure. In this respect, Virginia Code §2.2-3004 provides, in pertinent part, that a qualified state hearing may address "discrimination on the basis of race, color, religion, political affiliation, age, disability, national origin, or sex." Virginia Code §2.2-3004(A)(iii).[7]

---

[6] *See Univ. of Tenn. v. Elliott*, 478 U.S. (1986); *Rao v. County of Fairfax, Va.*, 108 F.3d 42, 45 (4th Cir. 1997) ("'The clear teaching of *Elliott* is that in a Title VII action a prior state decision enjoys . . . preclusive effect only if rendered or reviewed by a court.'" (quoting *McInnes v. California*, 943 F.2d 1088, 1093–94 (9th Cir. 1991))).

[7] Defendant, in its submission on this matter, underscored the fact that the Hearing Officer had the authority to assess any evidence presented regarding discriminatory discipline, including evidence purporting to show how other employees accused of similar conduct were

14

Accordingly, plaintiff's discriminatory discipline claim is now barred by Virginia's claim

preclusion doctrine because he could have brought this claim in his state grievance hearing, but

elected not to do so.

Research discloses no Supreme Court of Virginia decision that directly applies Rule 1:6.[8]

Nonetheless, the result reached here is consistent with the meager analogous authority that does

exist. To begin with, this case presents nearly identical facts to the facts presented in *Brooks v.*

*Arthur*, 611 F. Supp. 2d 592 (W.D. Va. 2009). There, the court applied Virginia Supreme Court

Rule 1:6 to bar the plaintiffs' § 1983 retaliation claim after the plaintiffs had previously litigated

a discrimination claim through the same state grievance procedure invoked by plaintiff in this

case. Notably, the court barred the § 1983 claim despite the fact that some of the retaliatory acts

occurred as interference with the state administrative hearing *during* the hearing. The court held

that the § 1983 claim was barred because "[t]he alleged acts of interference arose from the same

transaction—the termination of the Plaintiffs—that was the basis of the dispute in the grievance

hearings," and because the claim could have been brought in the grievance proceeding. *Brooks*,

611 F. Supp. 2d at 601. Specifically, the alleged acts of retaliation occurred before a final

---

disciplined. *See* Grievance Procedure Rules and Rules for Conducting Grievance Hearings, *available at* www.edr.virginia.gov.

[8] A search for Virginia decisions addressing Rule 1:6 disclosed only four cases, the previously cited Virginia Court of Appeals decision in *Virginia Imports Ltd.*, 650 S.E.2d 554, and three Virginia circuit court decisions consistent with the result reached here. *See Asterita v. Chent Dev. Parners*, No. 07-6408, 2009 Va. Cir. LEXIS 23 (Cir. Ct. Jan. 6, 2009) (reviewing history of Virginia *res judicata* principles and concluding the plaintiff's second claim was barred under Rule 1:6); *Gray Diversified Asset Mgmt. v. Canellis*, No. 07-15759, 2008 Va. Cir. LEXIS 147 (Cir. Ct. Oct. 7, 2008) (citing Rule 1:6 for the proposition that the "identical proof" test was no longer valid; *Winchester Neurological Consultants, Inc. v. Landrio*, 74 Va. Cir. 480, 489 (2008) (holding that under Rule 1:6, "termination of employment is a 'definable factual transaction' for the purpose of the application of res judicata").

decision had been made in the hearing, and the acts could therefore have been brought to the attention of the Hearing Officer, or the Director of EDR. In other words, despite the fact that no evidence had been presented in plaintiffs' grievance hearing regarding retaliation, the plaintiffs were nonetheless barred from later asserting a federal § 1983 claim for retaliation because the retaliation arose out of the same transaction as the claim asserted in the grievance, and plaintiffs therefore *could* have and *should* have brought the retaliation claims in the administrative hearing. Just as the plaintiffs in *Brooks* were precluded from relitigating an issue that should have been raised in their administrative hearing, so, too, for the same reasons, must plaintiff here be precluded from litigating his discriminatory discharge claim.

The Fourth Circuit also recently applied Virginia's claim preclusion doctrine in *Davani v. Clement*, 263 F. App'x 296 (4th Cir. Feb. 6, 2008). Although the *Davani* facts are not precisely the same as those presented here, the underlying rationale of *Davani* is essentially the same as the *ratio decidendi* of this decision. In *Davani*, the plaintiff presented evidence of discrimination at his state administrative hearing, but the Hearing Officer ruled that "no credible evidence was presented suggesting that the [Department of Transportation] disciplined [Davani] for any impermissible reason." *Id.* at 298. Davani then brought a federal discrimination action, claiming that his state grievance hearing only addressed the propriety of the Group II written notice issued to him, not the issue of discrimination. The Fourth Circuit affirmed the district court's dismissal of Davani's case on *res judicata* grounds, holding that the allegations of discrimination should have been, and were in fact, presented at the state hearing, and Davani was therefore precluded from litigating the claim in federal court. For essentially the same reasons, the same result

16

should obtain here.[9]

Plaintiff relies chiefly on *Jenkins v. Bay House Associates, L.P.*, 581 S.E.2d 510 (Va. 2003), to support his position that an issue not litigated or pled should not be subsequently precluded.  Plaintiff's reliance on *Jenkins* is misplaced; *Jenkins* involves neither claim preclusion under Rule 1:6, nor was the *Jenkins* court presented with the facts at issue here.  Instead, *Jenkins*, closely read, held only that "a court is not permitted to enter a decree or judgment order based on facts not alleged or on a right not pleaded and claimed."  *Id.* at 512.  In short, *Jenkins* is simply inapposite; it is a pre-Rule 1:6 decision that did not involve claim preclusion, or even issue preclusion.

In sum, the express language of Rule 1:6 mandates that a claim is precluded if it arises out of the same "conduct, transaction, or occurrence" as a previous claim made by the same party against the same party or parties, "regardless of the legal elements or the evidence upon which any claims in the prior proceeding depended, or the particular remedies sought."  Rule 1:6, Va. S. Ct.  Here, the occurrence or transaction that gave rise to plaintiff's grievance was his termination

---

[9] Interestingly, the Seventh Circuit, in *Waid v. Merrill Area Pub. Sch.*, 91 F.3d 857, 864 (7th Cir. 1996), announced an interpretation of federal common law claim preclusion essentially similar to that embodied in Rule 1:6.  Relying on the Restatement (Second) of Judgments §§ 24, 25, the Seventh Circuit stated that:

> principles [of federal common law] require plaintiffs to assert their claims initially in the forum with the broadest possible jurisdiction. . . .  If a plaintiff has a collection of claims that arise from one set of events and has an unconstrained choice between a forum of limited jurisdiction and a forum of broad jurisdiction, a decision to proceed in the more limited forum precludes her from bringing the unlitigated claims in a subsequent proceeding.

*Waid*, 91 F.3d at 864–65, *overruled on other grounds by Fitzgerald v. Barnstable Sch. Comm.*, 129 S. Ct. 788 (2009).

17

from NVTC following the investigation of the sexual harassment claim against him. Similarly, his termination from NVTC is the transaction that is the basis of his federal Title VII claim. Moreover, because plaintiff could have brought his discriminatory discipline claim in the prior state proceeding but elected not to do so, his assertion of that claim in this case is barred.

Accordingly, for these reasons, defendant's motion for reconsideration of the Court's denial of the defendant's motion to dismiss on the ground of claim preclusion must be granted.

An appropriate order will issue.

/s/

T. S. Ellis, III
United States District Judge

18